1146 Nuthatch Ln
Neenah, WI 54956

February 5, 2019

Honorable William Griesbach
Eastern District of Wisconsin
517 E. Wisconsin Ave
Milwaukee, WI 53202

Dear Judge William Griesbach,

I am writing to you today on behalf of my Brother, Seth Rector. My name is Ali Hendries. I am a graduate of the University of Wisconsin - Madison. Prior to becoming a Stay at Home Mother to my two sons, I was a corporate marketing professional. I have been an active volunteer in my community for more than 10 years, including volunteering at the Boys' and Girls' Brigade in Neenah as an adult mentor, attending a Leadership Training Conference at Camp Onaway every summer as an adult leader and coaching Girls on the Run at Tullar Elementary.

My brother and I grew up in a middle class family with two loving parents. As a child, Seth was kind, smart and energetic. He had many friends and excelled in athletics. He was a star baseball player and nationally awarded gymnast. We spent countless hours playing football, baseball and kick the can with our neighborhood friends. Our Mother comes from a large, close knit family. We grew up having Sunday dinners at our Grandparents with our extended family and getting together for birthdays, holidays, or just because. Even as adults, we continue to have large family gatherings. Seth has been and continues to be an active member of our family.

Seth truly is a kind and caring person. He is a devoted Son, Brother and Uncle. He spends quality time with my family and our parents. In fact, just this past week he watched the Super Bowl with our Dad and made our Mom a pot of his famous chili. Further, he has always been great with my kids. My boys love having Nerf gun wars with their Uncle Seth. My Brother is always willing to help out when needed. For example, when I was 8 months pregnant with my first son, my Husband and I found out we needed to have our roof replaced. That same week, Seth and his friend Tom spent the entire weekend replacing our roof. They worked hard from morning until night to get the job done. In addition, when I discovered my gutters were clogged, Seth came over right away to clean them out and install gutter guards.

The past year and a half has been heartbreaking for our family. My Brother is absolutely devastated and has slipped into a deep depression. He is ashamed and extremely remorseful. He has apologized to our family and worries about the pain he is causing our parents. I sincerely

believe that Seth will never commit an act like this again. I do not believe he poses a threat to anyone.

Seth is hardworking and can be a contributing member of our society. He is a skilled construction worker and has experience in roofing and siding. Being a felon and registered sex offender will impact every aspect of Seth's life. It will be a difficult road, but I strongly believe that Seth can lead a positive life and move forward from here.

Thank you, Your Honor, for taking these thoughts into consideration as you deliberate on the appropriate sentence. I will continue to offer support to my Brother and help him get through this difficult time.

Respectfully,

*A. Hendries*

Ali Hendries

Dear Judge William Griesbach

      My name is Justin Rehm and I am an Engineering Technician at Trachte Building Systems for the past three years. I am writing on Seth Rector's behalf, I have known Seth for the past 24 years. Seth has been a good friend of mine and we see each other regularly. Seth has always been a good loving friend to me and over the years I have learned a lot about him. Seth has always expressed to me his love for his family and the love he receives in return, I also know his family very well and they are all great people. I know they have brought him up the way a child should be with strong love, morals and family values. Two and a half years ago I bought a cabin up north and until about the last year and Seth has been by my side helping me transform it into the cabin of my dreams without asking for a single thing in return, knowing that he Is helping a friend is enough payment for him. In the time I have known Seth he has always wanted a wife and family of his own. I know what Seth has been going through with this case but I would like to mention that not once in the past 24 years has he ever given me any reason to believe he is the person that would commit the crime he is being charged with. We have had many deep conversations at my cabin when he is up there helping me out and we have expressed our deepest darkest secrets to each other time and time again. But not once have I ever thought that Seth would intentionally commit this sort of crime or anything even close to it. I have looked up to Seth throughout our friendship and I give him credit for helping me through some of my toughest times. He is an amazing man and what the outcome of this case might be I truly hope for the best for him to have a chance to rebuild from this and grow into the person he has always worked to be.


Sincerely,

Justin Rehm

Honorable William Griesbach
Eastern District of Wisconsin
517 E. Wisconsin Ave
Milwaukee, WI 53202

February 8, 2019

Your Honor,

My name is Loretta King (Rector), I am Seth Rector's Mother. I have been a homemaker and antique dealer for over 40 years. I have two children, Seth and a daughter, Ali. I am also a Grandmother. In the past 10 years I have been a caregiver to four family members.

As a child, Seth was very active. From age 9 to Sophomore year in high school he was involved in baseball, football and basketball. He was also a gymnast for several years. He was very motivated and excelled in everything he tried. In addition, he was a good student from grade school until his sophomore year in high school. Sometime between his sophomore year and junior year in high school Seth began hanging out with friends who were experimenting with marijuana and alcohol. Shortly after graduating from high school Seth had multiple DUI convictions and other charges. He has told me on multiple occasions that he wishes he had gone down a different path. For over a decade Seth has made changes in his life to improve his behavior. He consiously chooses to not drink and drive. He is an avid reader and particularly enjoys self improvement books. He is extremely hard working and has had various jobs in the construction field. He is experienced in masonry, roofing and siding.

Seth has always been a kind person. He would never hurt anyone and is always there to help someone in need. He loves his family very much and has many friends. Personally, Seth has help me many times with projects around the house. These projects include roofing a new home, patching a leaking roof, replacing gutters and roofing his grandfather home. Whenever I need him, he is always more than willing to help out.

The past year and a half has been devastating for Seth and our family. Seth has become depressed and has pulled away from some of his friends. He understands the severity of his crime and what it will mean to be a registered sex offender. This conviction will change and influence his entire life. He worries about all of the pain that he is causing his family and has apologized to me.

I strongly believe that Seth is capable of being a contributing member of society. He is hardworking and dependable and has many skills that make him employable. In addition, he has the support of his family and friends. I love my son very much and will always be there for him. Thank you for taking the time to read my letter.

Sincerely,

*Loretta King*

Loretta King

Mark Rector
4724 Periwinkle Ct.
Appleton, WI 54914

Honorable William Griesbach
Eastern District of Wisconsin
517 E. Wisconsin Ave
Milwaukee, WI 53202

February 6, 2019

Dear Judge William Griesbach,

My name is Mark Rector, I am the father of Seth Matthew Rector. I have worked two jobs my entire life as an Antique Dealer, and as a welder for Oshkosh Corporation. I am 65 years old and now retired.

The day my son was born, was the beginning of a wonderful relationship. And while Seth has stumbled along the way, I can honestly say that Seth has grown to be a man that any parent would be proud of. My son and I have a close relationship and enjoy spending time together on a regular basis. He is loving and always there when I need him.

As a child and teenager Seth was an outstanding athlete and became a national gymnast when he was 11 years old. Growing up, Seth had many close friends. He has always been kind, caring and selfless. In fact, on multiple occasions Seth has put his own life at risk to save the lives of others. The first instance happened when Seth pulled four of his friends from a burning car in Waupaca. The car ran off of the road into a raven, rolled several times, then started on fire. Everyone inside the car was knocked unconscious, except for my son. Seth risked his life by pulling the other four passengers to safely before the car exploded. The fifth life he saved was his friend Jason Mattson. Jason was washed out to sea by an undertow in the Atlantic Ocean in Florida. Seth saw him struggling to stay above water, so Seth went out the length of the football field, got to Jason, put him on his back and swam back to shore. I truly believe Seth is a hero. In these difficult situations be acted to ensure the safety of his friends. He is a good person and would help anyone in need.

Seth has been on house arrest for the last year and a half. Because of his restricted hours he lost his job in Green Bay as a roofer and sider. He has become depressed and absolutely crushed by this charge. He is so ashamed that he will be a register sex offender. He understands the severity of his crime and knows it will impact his entire life.

I believe Seth can lead a positive life and be a contributing member to society. He is a hard worker and has experience with roofing, gutters, siding and masonry. Once his sentence is served, he plans to continue to work in construction. I can honestly say that I believe Seth is not a threat to anyone. He has and will continue to have the support of his friends and family. We will be here for him no matter what the outcome.

Thank you,

*Mark Rector*

Mark Rector

Dear Judge William Griesbach,

My name is Michelle Lehman. I work as a resident tech in a nursing home and I also cook there. I am also attending nursing school. I am a Mom of four adults, my youngest is my 18 year old daughter Carly. Seth and I meet years ago and dated on an off for over five years and have stayed friends. At one point we lived together for about two years with one of my sons. My kids visited often and would stay with us weeks at a time, including my teenage daughter Carly. Seth was always caring and respectful to all of my children. After I heard what was happening to Seth, I talked to all of my children to ask if Seth ever made them feel uncomfortable around him. They all said no, stating they liked him and can't believe what's happening to him. This includes my daughter Carly, who said he was always respectful and acted appropriately around her. She said she never had an inkling of being uncomfortable around him. Seth has known Carly from age 12 to 18 and has been around her often in that time span. Also, my children's father has known and been around Seth and always felt comfortable with Seth.

Seth's family has always meant a lot to him. He talks about them quite often and helps them whenever they need anything. He spends a lot of time with both of his parents. He worries about how they feel and what they think. What's happening to him right now is tearing him apart. I have never seen him so depressed, he is usually happy and easy going. It hurts me to see him this way. He has told me often that he doesn't know what he'll do with himself if anything would happen to his parents if he was incarcerated for a period of time. He has broken down crying often while talking about this.

Seth has always been there through tough times in my life and has been a great friend. I had a major brain injury this past summer and needed a place to stay because I couldn't work for at least 6 months after it happened on doctors orders. Seth volunteered for me to stay with him. I was very depressed at this time in my life. Seth was always there and was always caring towards me during this difficult time.

Seth enjoys watching sports and informational documentaries. When we were together we also enjoyed watching game shows. He also cooked for us often. Seth and I were a happy couple. He never made me feel scared or nervous, I don't even remember us arguing about anything. He has been there for all his friends, including me. When someone needs something, he helps you if he can and doesn't make a big deal about it.

I believe jail time would cause unneeded stress on Seth and his aging parents. He is in contact with his Mom and Dad at least twice a week. About 6 months ago, his father's home was broken into and Seth's Dad was held up at gunpoint. I know this made Seth realize that the remaining time you have with your parents is precious. Also, around this time his Mother was sick for about 5 months. Again, Seth is scared to death that something might happen to his parents while he is incarcerated. I have a very hard time believing that Seth intentionally did what the charges say and I don't believe he belongs in prison.

I have a child who has been in prison for over a year and it causes me a lot of stress, pain and sadness. I know that Seth's parents would suffer deeply if he were incarcerated. The whole time Seth has had this hanging over his head he has been very depressed and isn't happy anymore. I do not want to see him suffer anymore. Thank you.

Sincerely,

920 809-6628

Michelle Lehman



# Clinical Psychology Associates

www.clinicpsych.com

345 Milwaukee Ave.
Burlington, WI 53105
262•763-9191

207B N. Milwaukee St.
Waterford, WI 53185
262•534-7777

## Forensic Evaluation

<u>Subject's Name:</u> Seth Rector
<u>Birth Date:</u> 07/05/1981
<u>Evaluation Date:</u> 01/22/2019
<u>Chronological Age:</u> 37 Years
<u>Report Date</u>: March 1, 2019

Case No.:     United States v. Seth Rector
             0757 1:18CR00103-001 (Eastern District of Wisconsin – Green Bay)

### Referral

Seth Rector is currently charged in the Federal District Court for the Eastern District of Wisconsin with one counts of Possession of Child Pornography. According to documents provided to me, Mr. Rector was obtaining and distributing child pornography via the Bit Torrent network. Investigators from the FBI obtained a search warrant and found Bit Torrent file sharing software as well as numerous child pornography images or video files. Mr. Rector was interviewed by FBI agents, and reportedly made a number of inculpatory statements. He was referred by his defense attorney for an evaluation to determine his risk for engaging in a contact offense with children, as part of information to be provided to the Court for use at sentencing.

### Procedure

I met with Mr. Rector in my Burlington office for about three hours on January 22, 2019. During that meeting I administered a number of psychological tests including the Shipley-2 and the Minnesota Multiphasic Personality Inventory-2-Restructured Form (MMPI-2-RF). I completed a structured sexual behavior interview, and based on my review of the material, test results, and my interview with Mr. Rector, I scored an instrument called the Sexual Violence Risk-20.

At the outset of the evaluation I discussed the parameters of confidentiality and privilege with Mr. Rector. I explained that the defense counsel retained me, and that the information provided to me fell within the attorney-client work product doctrine. I explained that the information was confidential and privileged, and that it would not be shared with others without the permission of

Mr. Rector and his attorney. I further explained that in the event that any of my information was released to other persons, the entire file would become discoverable. Mr. Rector seemed to understand my explanation and agreed to proceed with the evaluation. During the course of the evaluation I reviewed the following materials:

Extensive discovery material
Indictment
Pretrial Services Report
Polygraph Examination Report

## Relevant Background History

Mr. Rector was born in Appleton, Wisconsin and is the oldest in a sibship of two. He attended Appleton West high school, and graduated from a regular education program in 1999. He never underwent an IEP evaluation. He subsequently attended Fox Valley Technical College where he took general education courses for about two semesters. Following his graduation from high school Mr. Rector worked for about eight years as a mason. He left that job for more money, and subsequently worked in the roofing business for various contractors and as a self-employed roofer for about ten years.

When Mr. Rector was about age 21 years, he lived in Florida briefly but returned to Wisconsin shortly afterward due to the heat, the working hours, and the weather. Mr. Rector has a history of three operating while intoxicated (OWI) convictions in a period of about one month when he was about 18 years of age. He also was convicted of possession of marijuana in 2012, and has a history of other minor offenses that include numerous traffic offenses (seatbelt violations, proof of insurance, and speeding) as well as a number of resisting/obstructing charges that were dismissed and read in. He has no history of inpatient or outpatient psychotherapy, and participated in an alcohol/drug treatment program called "TAP" following his 2012 charges. Mr. Rector reported that he had been engaged to be married on two occasions, but they did not work out. He has no children. Currently Mr. Rector takes no medication. His medical history is relatively unremarkable. He has no history of seizures, loss of consciousness, or other physical problems, and no history of physical or sexual abuse. He reported a possible concussion around 18 years of age secondary to a ski incident. Mr. Rector currently lives alone and is self-employed in the roofing and siding business.

## Current Clinical Condition

Mr. Rector presented as an adequately dressed and groomed man in no acute distress. He was alert and oriented, and was friendly and cooperative with me throughout the evaluation session. When discussing the nature of his charges Mr. Rector appeared to be significantly embarrassed by the child pornography content that had been found on his device. Mr. Rector reported significant levels of stress related to his charges, and noted that the night before the current evaluation he did not sleep well as a result. Mr. Rector noted that his sleep schedule has been thrown off because of his worry and stress about his legal situation. He receives emotional support from parents, his sister, and his friends. Mr. Rector noted some weight gain over the past six months, as well. He denied auditory, visual, or olfactory perceptual disturbances and gave no

sign of a more serious mental illness. Likewise, when I asked him about suicidal or homicidal thoughts or attempts he reported none of them.

In a discussion concerning his index offense, Mr. Rector reported that he originally obtained his computer and accessed torrent sites in order to watch television shows while avoiding commercials. He stated that he started downloading television shows as well as pornography, and that he would simply download material to a queue and then open the queue the next morning and look through it. He reported that in general if he found child pornography he would delete it. Mr. Rector noted that his interest in pornography began at about age 14 when he found his father's Playboy magazine. He looked at pornography until he was around 23 or 24 years of age, but then did not have access to it. He noted that he had just recently obtained Internet access (about 18 months prior to his arrest) and that he was looking at pornography once or twice per week while masturbating. He stated that he was not happy with himself due to his looking at pornography. Mr. Rector indicated that he was interested in adult pornography, and that when he found child pornography in his download folder he would delete it. He reported that his masturbation fantasies included adults and not children.

## Collateral Information

Review of the collateral information available to me indicates that Mr. Rector's reports to other individuals, including pretrial supervision services and his interrogators, was consistent with his reports to me.

## Test Data

The Shipley-2 is a revision and restandardization of the Shipley Institute of Living Scale, which is a brief measure of cognitive functioning and impairment that has been used for many decades. The instrument assesses crystallized ability (knowledge that has been gained as a result of education and experience, such as vocabulary words) and fluid cognitive ability (the ability to learn and acquire new information (e.g., using available information to solve problems). The instrument provides estimates of overall cognitive abilities with reasonable composite reliability coefficients (.87 to .93).[1]

|                          | **Vocabulary** | **Abstraction** | **Composite** |
|--------------------------|:--------------:|:---------------:|:-------------:|
| **Raw Score**            | 31             | 15              | 206           |
| **Standard Score[2]**    | 105            | 101             | 101           |
| **Percentile Rank**      | 63             | 53              | 53            |
| **Interpretive Category**| Average        | Average         | Average       |

Mr. Rector's performance on the Shipley-2 places him solidly within the Average range.

---

[1] Shipley-2 Manual, p. 3.
[2][2] Standard scores have a mean of 100 and a standard deviation of 15. For example, a standard score of 70 corresponds to the second percentile.

The <u>Minnesota Multiphasic Personality Inventory</u> (MMPI) is a psychological test that assesses personality traits and psychopathology. It is primarily intended to test people who are suspected of having mental health or other clinical issues. Arguably one of the most widely utilized psychological tests in the world, the MMPI is currently commonly administered in one of two forms-the MMPI-2, which has 567 true/false questions, and the newer MMPI-2-RF, published in 2008 and containing only 338 true/false items. Another version of the test--the MMPI-A--is designed exclusively for teenagers.

On the MMPI-2-RF, Mr. Rector produced what appeared to be a valid profile. His scores did not suggest that he attempted to manipulate my impressions of him. In general, Mr. Rector's Higher Order and Restructured Clinical Scales were within normal limits. The only exception to this was his score on a subscale reflecting antisocial behavior, on which Mr. Rector obtained a T-score of 71.[3] This score fell within the range expected for men undergoing evaluation in criminal pretrial proceedings. Mr. Rector's scores on the Somatic/Cognitive and Internalizing Scales were all well within normal limits. His scores on the Externalizing, Interpersonal, and Interest Scales were also within expected limits with the exception of scores reflecting juvenile conduct problems and substance abuse. Mr. Rector's scores on these two subscales were elevated (T scores = 70 and 77, respectively), and likely reflect Mr. Rector's significant history of substance abuse difficulties. On measures of personality functioning, Mr. Rector again produced relatively low scores with the exception of the Disconstraint scale, on which his T-score of 69 was within the range expected for men undergoing criminal pretrial assessment. Persons with some similar score patterns report a number of unconstrained behaviors such as acting out behaviors, impulsivity, or sensation or excitement seeking.

### Risk Assessment

In a structured sexual behavior interview, Mr. Rector reported typical fifth-grade sex education activities. He described sexual contact several years earlier than most teens, and denied unusual sexual interests or practices. Overall, his sexual history was relatively unremarkable.

A risk assessment with Mr. Rector presents difficulties in that most sex offender risk assessment scales have been developed and standardized on individuals who have had contact offenses with actual victims. Such is not the case with Mr. Rector, whose illegal sexual behavior was limited to downloading child pornography over the Internet. In fact, one of the major sex offender risk assessment scales, the Static-99R, specifically excludes individuals such as Mr. Rector, indicating that individuals whose offenses have been limited to downloading child pornography cannot be scored on that instrument.

However, both common sense and the research literature indicate that all else equal, an individual whose life is well managed presents less risk than an individual whose life is in disarray. Therefore, to assess Mr. Rector's current and recent adjustment, I scored him on the Sexual Violence Risk – 20 (SVR-20).

---

[3] A T-score has a mean of 50 and a standard deviation of 10. For example, a T-score of 70 would correspond with the 98th percentile.

The SVR-20 is an instrument that utilizes structured professional judgment to assess a specific individual's future risk of sexual violence. Such behavior is defined as actual, attempted, or threatened sexual contact with a person who is nonconsenting or unable to give consent. The instrument was developed specifically for use in sexual violence risk assessments conducted in criminal and civil forensic contexts, and is appropriate for use in situations where an individual has committed or is alleged to have committed an act of sexual violence. The guided clinical judgment approach utilized by the SVR-20 is superior to more limited actuarial approaches to risk assessment, as it allows the evaluator to consider a broader scope of risk variables that have been identified in the professional and empirical literature as important. In addition, this approach allows the evaluator to consider dynamic (changeable) risk factors in addition to the static (unchangeable; historic) variables generally considered by commonly used actuarial instruments. The SVR-20 (and similar instruments) does not produce a single numerical probability of future risk. Alternatively, it allows the evaluator to provide categorical risk levels (e.g., Low, Medium, and High) and can be used to facilitate treatment interventions to decrease risk factors with specific individuals.

The SVR-20 guides the evaluator in the systematic assessment of 20 different risk factors. These are grouped into four major areas. The first, Psychosocial Adjustment, covers areas such as sexual deviation, victim of child abuse, psychopathy, major mental illness, substance use problems, suicidal/homicidal thoughts, relationship and employment problems, and past violent and nonviolent offenses and supervision failure. The second area, Sexual Offenses, reviews high density sex offenses, multiple offense types, physical harm to victims, use of weapons or threats, escalation in frequency or severity of sex offenses, extreme minimization or denial of sex offenses, and attitudes that support or condone sex offenses. The third area, Future Plans, considers an individual's realistic plans for the future and his or her attitude toward intervention. The final category, Other Considerations, allows the evaluator to consider rare but important risk factors that are not included as separate items on the instrument, such as acute mental disorders that do not meet specific diagnostic criteria, losses of social support networks, or frequent contact with potential victims. The examiner is also free to consider the results of other research; for example, the age of the subject.

On the SVR-20 Psychosocial Adjustment area, I scored as "Present" sexual deviation (based on Mr. Rector's possession of child pornography), substance use problems, relationship problems, past nonviolent offenses, and past supervision failure. I scored as "Questionable" any history of past nonsexual violent offenses based on Mr. Rector's history of resisting and obstructing charges (I was unable to obtain the criminal complaints or police reports for these episodes). The remaining items in the Psychosocial Adjustment group were rated as "Not Present." In the area of Sexual Offenses, none of the items were rated as "Present." Likewise, no risk issues in the Future Plans area were rated as "Present." Overall, the SVR-20 items suggest that Mr. Rector is at Low to Low-Moderate risk for future sexual reoffending.

## Integration of Findings and Recommendations

Mr. Rector is a 37 year-old man who has been charged with possession of child pornography.

First, his illegal Internet activity could be a reflection of a broadly antisocial personality and lifestyle in which the individual violates a variety of societal norms and laws. If this were the case, one would expect to see the usual indicators of an antisocial personality disorder, such as prior criminal offenses (including nonsexual offenses), substance abuse, and both job and relationship instability. There is only mild evidence that such is the case with Mr. Rector. He has had only minor with the criminal justice system. There are no indications of a broadly antisocial lifestyle or of a callous, exploitive personality.

Second, the illegal Internet activity could be a reflection of a preferential pedophilic sexual preference. If this were the case, the individual's risk to the public would be elevated. If this explanation were to apply, one would expect to see significant evidence of preferential interest in sexual activity with minors, including perhaps an extensive collection of child pornography (to the exclusion of adult pornography). In more extreme cases, other behavioral indicators of sexual interest in minors would be present, such as attempts to contact minors over the Internet or otherwise for sexual activity. This possibility is the most difficult to assess, given that it relies heavily on the defendant's self-report. Given present information, I do not see evidence Mr. Rector's present Internet offense is preferential. There are no indications or allegations that he has ever tried to contact minors for sexual activity. Moreover, by his account, the sexual stimuli he viewed on the Internet were not limited to child pornography, but included a wide range of adult pornography as well.

Third, the illegal sexual Internet behavior could be a reflection of experimentation and exploration on the Internet of various fantasies that the individual would not enact with a real victim. The assumed (although illusory) anonymity and ease of access of the Internet might cause an individual to explore areas that he would otherwise not pursue. The Internet is a highly accessible and affordable medium that provides its users with a sense of anonymity, which in turn can lessen social risk and allow people to engage in highly disinhibited sexual behavior. The phenomenon of engaging in behavior that may not otherwise have been engaged in but for the Internet, and may have contributed somewhat to Mr. Rector's present offense, has been termed the "online disinhibition effect."[4]

In short, considering the context in which behavior occurs is necessary and essential to understanding the behavior. If experimentation were the motivator, one would expect that child pornography would be only one part of a broader interest in pornography, much of which focuses on adults. In addition, one would expect an absence of indicators of attempts to solicit sexual activity with minors, and there are no indications that Mr. Rector has had or attempted to have sex with any minors. In Mr. Rector's case it appears that the child pornography was downloaded incidentally as parts of larger files of adult pornography, and then deleted as Mr. Rector sorted through the downloaded files. The prognosis in cases like this would be the most favorable, given the very limited nature of any sexual focus on minors. Given present information, Mr. Rector's case appears to fit a pattern of indiscriminate downloading and subsequent discarding of pornography in which he was less interested.

Moreover, research available on Internet child pornography offenders indicates that those offenders whose only offense is the one child pornography arrest have low rates of recidivism,

---

[4] Suler, J. (2004). The online disinhibition effect. *CyberPsychology & Behavior, 7(3)*, 321-326.

especially for future hands-on sex offenses.[5]  For example, a recent study of federal child pornography offenders by the United States Sentencing Commission followed for an average of eight years found a 7.4% sex offense recidivism rate.[6]  The group of child pornography offenders for whom recidivism rates are high are those with significant antisocial histories.  That is, given that an individual has been arrested for downloading or viewing of child pornography, the likelihood of his molesting a child is low unless he has a significant general antisocial history or personality--e.g., conduct disorder and juvenile delinquency as a teen, nonsexual charges as an adult--and the higher the degree of general antisocial history, suggesting general impulse control problems, the greater the likelihood that a child pornography offender will also commit a hands-on sex offense with a child.[7]  This effect is clearly seen in two graphs (attached as an appendix) in which the likelihood of being a child molester, given that one has been arrested for downloading child pornography, increases steadily as the history of antisocial behavior in that individual increases. The reasoning is that the increased social and vocational competency associated with lack of antisocial history acts as an inhibitor to prevent crossing over to a contact sex offense. By contrast, the impulsivity, disregard for others, and lack of remorse, guilt, or empathy associated with the generally antisocial individual acts, in a way, as an accelerant, making crossing over to a contact offense much more likely. Fortunately, in Mr. Rector's case, little such antisocial history is present.

All factors considered together, Mr. Rector presents as a low to low-moderate risk individual.  I understand that there are legal issues beyond my purview.  However, I can at least say that clinically, Mr. Rector presents as well within the limits of risk appropriate for outpatient management.

David W. Thompson, Ph.D., ABPP
Clinical and Forensic Psychologist
Diplomate in Forensic Psychology
American Board of Professional Psychology

---

[5] See, for example, Eke, A. W. & Seto, M. C. (2008). Examining the criminal history and recidivism of registered child pornography offenders, Presented at the Association for the Treatment of Sexual Offenders convention, October 2008, Atlanta, Georgia; Endrass, J., Urbaniok, F., Hammermeister, L. C., Benz, C., Elbert, T., Laubacher, A., & Rossegger, A. (2009). The consumption of Internet child pornography and violent and sex offending. *BMC Psychiatry, 9*, 43-67. Downloaded from http://www.biomedcentral.com/content/pdf/1471-244x-9-43.pdf on 7/17/09; Seto, M. (2008). *Pedophilia and sexual offending against children. Washington, D.C.: American Psychological Association.* Witt, P.H. (2010). Assessment of risk in child pornography cases. *Sex Offender Law Report*, 11(1), pp. 1, 4, 13-15.

[6] Report to Congress of the United States Sentencing Commission: Child Pornography Offenders (December 2012), downloaded from
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/ 201212_Federal_Child_Pornography_Offenses/index.cfm.

[7] Lee, A. F., Li, N.-C., Lamade, R., Schuler, A., & Prentky, R. A. (2012, April 16). Predicting hands-on child sexual offenses among possessors of internet child pornography. *Psychology, Public Policy, and Law*. Advance online publication. doi:10.1037/a0027517.

**Appendix A**



From presentation materials of Robert Prensky, PhD, describing the results of Lee, A. F., Li, N.-C., Lamade, R., Schuler, A., & Prentky, R. A. (2012, April 16). Predicting hands-on child sexual offenses among possessors of internet child pornography. *Psychology, Public Policy, and Law*. Advance online publication. doi:10.1037/a0027517

This graph demonstrates that the likelihood of a child pornography offender being a child molester (CM) increases steadily as an individual's history of general antisocial behavior increases.

---------------------------------------------------------------------------------



115 East Main Street, Madison WI 53703  PH: (608) 772-8019 Email: juan@siftusa.com

---

**CASE REPORT**                    **Case # 18CR103**

---

**Client:** Attorney John Birdsall / Seth M. Rector
**Case Representatives:** Nicholas Schiavo, Juanluis Villegas
**Reporting Technicians:** Nicholas Schiavo, Juanluis Villegas
**Date of Report:** 2/28/2019

**Table of Contents:**

Case Representative ..................................................................................................... 2
Scope of Work to be Performed .................................................................................... 2
Time Zone ...................................................................................................................... 2
Tools and Sources .......................................................................................................... 2
DEFINITIONS ............................................................................................................... 2
Hash Values ................................................................................................................... 2
File Created .................................................................................................................... 2
File Last Accessed .......................................................................................................... 2
.EO1 File ........................................................................................................................ 2
Web Cache or Internet Cache ........................................................................................ 3
Security Account Manager .............................................................................................. 3
ANALYSIS ...................................................................................................................... 3
Dates, Times, and Places of Case Preparation, Processing, and Analysis ....................... 3
QMW1_1 ........................................................................................................................ 3
QMW2_1 ........................................................................................................................ 3
3 Charged Files ............................................................................................................... 3
Lucid Folder ................................................................................................................... 5
Google Searches ............................................................................................................. 5
Parsed Search Queries .................................................................................................... 6
Affidavit in Support of Search Warrant Application ...................................................... 6
CONCLUSIONS ............................................................................................................. 6
SIGNATURE PAGE ....................................................................................................... 8
Case Representative Signature ........................................................................................ 8

**Case Representative**

The Case Representative oversees all procedures and serves as the Expert for this case.

I understand that my duty as an expert is to assist the court by providing impartial, objective, unbiased, and independent opinions uninfluenced by the party who has retained my services or is calling me as a witness. I have complied with and will continue to comply with that duty.

**Scope of Work to be Performed**

On 11/12/2018 Attorney John Birdsall requested that SIFT examine the forensic image of two computers.

SIFT was asked to examine the forensic images for information about the presence of child pornography.

**Time Zone**

Time references for this report are in Universal Time Coordinated (UTC). This is the standard format in which Forensic Technicians and Analysts report times from computers running Microsoft Windows operating systems. UTC is the same as Greenwich Mean Time (GMT) and the current world time standard.

**Tools and Sources**

Magnet Software's AXIOM v2.7.1.12070
FTK Imager 3.1.5.0
SAMinside

**DEFINITIONS**

**Hash Values**

A hash value is a numeric value of a fixed length that uniquely identifies data. A hash value is of importance to an investigator and forensic analyst because it allows the analyst to compare a known file to another file of interest. If the hash values do not match, then the files are not the same.

**File Created**

This is the time the file was created.

**File Last Accessed**

This is the approximate time that the file data was last accessed.

**.EO1 File**

The ".e01" extension file is primarily recognized as "Encase Image File Format". The E01 image file format is also known as EWF (an acronym for Expert Witness Format). The concept of the E01 encase image (developed by Encase software) came into existence as a result of efforts by the Guidance Software to assist forensic investigators, analysts, and forensic scientists in finding an organized and systematized data for investigation.

**Web Cache or Internet Cache**
Temporary storage to reduce sever lag and to increase browser speed and performance.

**Security Account Manager**
The Security Account Manager (SAM) is a database in the Windows operating system that contains user names and passwords. SAM is part of the registry.

## ANALYSIS
Dates, Times, and Places of Case Preparation, Processing, and Analysis.

On November 26, 2018 case technician Juan Villegas processed and prepared data from .E01 images of a Toshiba 500GB HD (QMW1_1) that came from a Dell Inspiron 3646 and a Seagate 500GB HD (QMW2_1) that came from a HP Pavilion p2-1124, at the Federal Bureau of Investigation's office in St. Francis, Wisconsin.

On November 28, 2018 case technician Juan Villegas processed and created an Axiom portable case and a custom content image of the both drives at the Federal Bureau of Investigation's office in St. Francis, Wisconsin.

On November 29th, 2018 Juan Villegas brought the processed evidence and portable case to the SIFT laboratory for analysis. The AXIOM portable case and custom content image were created with information about the computer, hard drives, content, and contraband images. The contraband images themselves were not included or needed for the analysis at the SIFT laboratory.

## QMW1_1
SIFT examined the QMW1_1 SAM registry files and found that the most recent Operating System was Windows 8.1 version 6.3 and was installed on the computer on 07/10/2016 at 10:33:43 PM (UTC) with a registered owner "devs". Based on the SAM registry file, from 07/10/2016 at 10:33:43 PM (UTC) to when the computer was seized, there was a password for the user "devs". SIFT used the SAMinside tool to verify that there was a password.

## QMW2_1
SIFT examined the QMW2_1 SAM registry files and found that the most recent Operating System was Windows 7 Home Premium version 6.1 and was installed on the computer on 06/15/2016 at 11:36:38 AM (UTC) with a registered owner "l". Based on the SAM registry file from 06/15/2016 at 11:36:38 AM (UTC) seized the use of a password was verified for the user.

## Charged Files
The list below contains information about the 3 charged files along with their respective metadata. These files were recovered from both the QMW1_1, and QMW2_1.

Charged Files #1 and #2 are on the QMW1_1 HD (Dell Inspiron 3646) while Charged File #3 is on the QMW2_1 HD (HP Pavilion p2-1124).

| Charged file information | Approximate Image Size |
|---|---|
| **Charged File #1**<br>**Name:**83D51127BC9CA5C44F86405EDE9F15<br>1BBED3EFC4<br>**File Created:** 10/24/2017 11:13:02 PM<br>**Last Accessed:** 10/24/2017 11:13:02 PM<br>**MD5 Hash Value:** dc673a3d42e318d81fe6d70cbf558719<br>**Full Path:** QMW1_1.E01\Basic data partition (5)<br>[467535MB]\OS [NTFS]\[root]\Users\devs\AppData\Local\<br>Mozilla\Firefox\Profiles\qziz2oz0.default\c<br>ache2\entries\83D51127BC9CA5C44F86<br>405EDE9F151BBED3EFC4 |  |
| **Charged File #2**<br>**Name:** A14B22CD7E9C4CEC8CE4BD2377C116<br>B3AACCE0C2<br>**File Created:** 10/24/2017 11:04:48 PM<br>**Last Accessed:**10/24/2017 11:04:48 PM<br>**Hash Value:** ec53f3012864ac2db7e222c77cce1a89<br>**Full Path:** QMW1_1.E01\Basic data partition (5)<br>[467535MB]\OS [NTFS]\[root]\Users\devs\AppData\Local\<br>Mozilla\Firefox\Profiles\qziz2oz0.default\c<br>ache2\entries\A14B22CD7E9C4CEC8CE<br>4BD2377C116B3AACCE0C2 |  |
| **Charged File #3**<br>**Name:**1C72C63A0416D404A7267E1EE2A3F22<br>18F19ADFC<br>**File Created:** 7/1/2016 9:35:54 AM<br>**Last Accessed:** 7/1/2016 9:35:54 AM<br>**MD5 Hash Value:**<br>903a06ac6a038cfb8db82c24741c43e3<br>**Full Path:** QMW2_1.E01\Partition 2<br>[459850MB]\OS[NTFS]\[root]\Users\l\AppData\Local\Mozil<br>la\Firefox\Profiles\23recwts.default\cache<br>2\entries\1C72C63A0416D404A7267E1E<br>E2A3F2218F19ADFC |  |

The above approximate image size examples, shown in blue, are provided as examples of the size of each image as it would have appeared on an average monitor. These sizes are consistent with what SIFT commonly see's in web cached entries.

The charged images have the following image sizes (in pixels):

| # | Width | Height |
|---|-------|--------|
| 1 | 200 | 267 |
| 2 | 240 | 320 |
| 3 | 100 | 130 |

The charged files are all web cached entries, not saved by the user or accessible by the user.

These web cache files are located within a subfolder called "AppData" which, by default is a hidden folder within Windows.

These files were only found within the web cache located in, "AppData\Local\Mozilla\Firefox\ Profiles" and were not located in any other location on either the QMW1_1.EO1 HD or the QMW2_1.EO1 HD.

There is no indication that the charged files were ever downloaded to the computer.

**"lucid" Folder**
There was a folder called "lucid" within the following path:

"QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\Downloads \lucid"

Within the "lucid" folder were sub folders, images, and files. The image files all have a creation date of 9/4/2017 and progressive creations time between 5:43:43 PM UTC to 6:05:47 PM.

The "lucid" Folder, progressive creation times, and its contents are consistent with a single download of the "lucid" Folder containing all the files recovered on the QMW1_1.EO1 HD.

Based on SIFT's review It is plausible that the "lucid" folder name was not user generated. This is where the majority of the remaining child pornography files were found. SIFT's review found 4 other child pornography files. 3 were located in unallocated space and 1 was located in "QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\Desktop\Newfolder\".

**Google Searches**
This section includes artifacts recovered by Magnet Axiom and contains recovered URLs that are associated with the google search engine. SIFT performed a review of 2 Google searches that resulted from the processing of the QMW1_1 and QMW2_1 hard drives. From SIFT's training and experience **NONE** of these searches are commonly used to search for child pornography. The 2 **Google Searches** are included as an addendum to this report in .xlsx format.

**Parsed Search Queries**

This section includes artifacts recovered by Magnet Axiom and contains all the URLs that are associated with all other search engines that are parsed out by this tool other than Google. SIFT performed a review of 23 parsed search queries that resulted from the processing of the QMW1_1 and QMW2_1 hard drives. From SIFT's training and experience **NONE** of these searches are commonly used to search for child pornography. The 23 **Parsed Search Queries** are included as an addendum to this report in .xlsx format.

**Affidavit in Support of Search Warrant Application**

Paragraph 23 of the "Affidavit in Support of the Search Warrant Application" referenced two video files (files 18 and 19) as files that depict child pornography. The files below were searched for on QMW1_1 and QMW2_1:

> File 18:
> "(Phtc)Kimmy 12Yo StPetersburg - 11 Yo First Hair Poses- Newest.avi"
>
> File 19:
> eTcKoe nopHo(porn) preteenincest{vrnuecT}=ll-neTHIOIO .r:i;esot.rKy e6yT B nony.avi"

According to paragraph 22 of the "Affidavit in Support of Search Warrant Application" these files were viewed from SA Pleming's evidence library and were found based on infohash data he claims to have collected during his online investigation.

Neither File 18 nor File 19, or any remnants, were located on QMW1_1 HD and QMW2_1 HD.

**CONCLUSIONS**

The most recent Operating System of the QMW1_1 was Windows 8.1 version 6.3 and was installed on the computer on 07/10/2016 at 10:33:43 PM (UTC) with a registered owner "devs". Based on the SAM registry file from 07/10/2016 at 10:33:43 PM (UTC) to when the computer was seized, there was a password for the user "devs".

The most recent Operating System of the QMW2_1 was Windows 7 Home Premium version 6.1 and was installed on the computer on 06/15/2016 at 11:36:38 AM (UTC) with a registered owner "l". Based on the SAM registry file from 06/15/2016 at 11:36:38 AM (UTC) to when the computer was seized there was a password for the user "l".

Charged File #1 and #2 are located on the QMW1_1 HD (Dell Inspiron 3646), while Charged File #3 is located on the QMW2_1 HD (HP Pavilion p2-1124).

The 3 charged files all resided in web cache which is a temporary storage for files. These files are not saved by the user or user accessible. These files are also not full-sized images.

The 3 charged files are located in a folder that is hidden by default by Windows computers. These files would not be user accessible by default.

Appendix 21

There is no indication that the charged files were ever downloaded to the computer.

The "lucid" Folder, progressive creation times, and its contents are consistent with a single download of the "lucid" Folder containing all the files recovered on the QMW1_1.EO1 HD.

Based on SIFT's review It is plausible that the "lucid" folder name was not user generated. This is where the majority of the remaining child pornography files were found. SIFT's review found 4 other child pornography files. 3 were located in unallocated space and 1 was located in "QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\Desktop\Newfolder\".

None of the recovered Google Searches contain commonly used terms to search for child pornography.

None of the recovered Parsed Search Queries contain commonly used terms to search for child pornography.

Files 18 and 19 were used in the "Affidavit in Support of the Search Warrant Application". SIFT searched for both of the files, and neither the files themselves or any remnants of those files were located on the QMW1_1 HD or QMW2_1 HD.


End Report.

SIGNATURE PAGE

This report is submitted by the following parties. All information obtained by SIFT has been archived for future examination and analysis if requested.

Case Representative Signature

*Juanluis Villegas*
Juanluis Villegas,                                           Special Investigations &
Analyst                                                      Forensic Technologies


2/28/19
Date

Appendix 23

| Record | Search Term | URL | Artifact | Artifact ID | Source | Location | Evidence number |
|--------|-------------|-----|----------|-------------|--------|----------|-----------------|
| 1 | https://www.google.com/adsense/support/bin/request.py?contact=abg_afc&url=http://www.youtube.com/video/HScCQjp9JWI&gl=US&hl=en&client=ca-pub-6219811747049371&ai0=CCbmgE13xWdfSDM7szgW3hruoB7Wfw4pI_9Wcof8F3b7o-NQJEAEg4_uTA2DJvsuN_KTMFKAB8OnHmwPIAQKoAwHIA8kEqgSeAU_Q2bARvCDTFoxb5WI2T31RV5gGNyjhGqF6IrXTCmQW-_8Dk7e3gAVwmkDN3FjEjfhsiMCuvnKxZfEd7SkE1m2g8Z4S96ifRbNtDcfEAnQqorSEy_F9HJ6hG9GBKVBEua7JJ3DGerYGhTCFQ0GdEtrzSmNYm06puwpHHUo-KFbiT4OyGhDrB | https://www.google.com/url?ct=abg&q=https://www.google.com/adsense/support/bin/request.py%3Fcontact%3Dabg_afc%26url%3Dhttp://www.youtube.com/video/HScCQjp9JWI%26gl%3DUS%26hl%3Den%26client%3Dca-pub-6219811747049371%26ai0%3DCCbmgE13xWdfSDM7szgW3hruoB7Wfw4pI_9Wcof8F3b7o-NQJEAEg4_uTA2DJvsuN_KTMFKAB8OnHmwPIAQKoAwHIA8kEqgSeAU_Q2bARvCDTFoxb5WI2T31RV5gGNyjhGqF6IrXTCmQW-_8Dk7e3gAVwmkDN3FjEjfhsiMCuvnKxZfEd7SkE1m2g8Z4S96ifRbNtDcfEAnQqorSEy_F9HJ6hG9GBKVBEua7JJ3DGerYGhTCFQ0GdEtrzSmNYm06puwpHHUo-KFbiT4OyGhDrB | Potential Browser Activity | 2787 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\pagefile.sys | File Offset 2239465465 | QMW1_1.E01 |
| 2 | usgoldbureau.com | http://www.google.com/shopping/seller?q=usgoldbureau.com | Potential Browser Activity | 581882 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\pagefile.sys | File Offset 2444878481 | QMW2_1.E01 |

Appendix 24

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | #LarryElderOnJRE | http://www.youtube.com/results?search_query=%23LarryElderOnJRE | | | Youtube | | Potential Browser Activity | 583166 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\pagefile.sys | File Offset 2612767329 | QMW2_1.E01 | |
| 2 | 305360852900421 | https://www.facebook.com/fr/u.php?p=305360852900421&m=FL1WoxS9UacM51f1ELleokexV6UMslL_QLDrKME2 | | | Facebook | | Firefox Cache Records | 541502 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\AppData\Local\Mozilla\Firefox\Profiles\qziz2oz0.default\cache2\entries\C0C30B908409A3F274446E1DC99E2D640E5C2BD9 | n/a | QMW1_1.E01 | Yes |
| 3 | 305360852900421 | https://www.facebook.com/fr/u.php?p=305360852900421&m=hNgtzNTeL5yciSif0I42zYnbKM6c2y6c19bYQ6t_ | 6/19/2016 2:43:57 AM | | Facebook | | Internet Explorer Cache Records | 779552 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Microsoft\Windows\Temporary Internet Files\Low\Content.IE5\index.dat | File Offset 4482176 | QMW2_1.E01 | |
| 4 | 328546547221502 | http://www.facebook.com/fr/u.php?p=328546547221502&m=3646017315648414587&t=2592000 | 6/15/2016 11:14:27 PM | | Facebook | | Internet Explorer Cache Records | 773539 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Microsoft\Windows\Temporary Internet Files\Low\Content.IE5\index.dat | File Offset 256384 | QMW2_1.E01 | |

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 391363987594223 | https://www.facebook.com/fr/u.php?p=391363987594223&m=3079165331555949563 | 7/3/2016 1:00:49 AM | | Facebook | | Internet Explorer 10-11 Content | 759455 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Microsoft\Windows\WebCache\WebCacheV01.dat | File Offset 46424871 | QMW2_1.E01 | |
| 6 | 418865601488577 | http://www.facebook.com/fr/u.php?p=418865601488577&m=542d5762-d9d6-4c00-b34e-822401216bfe | 6/16/2016 9:48:42 PM | | Facebook | | Internet Explorer Cache Records | 774355 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Microsoft\Windows\Temporary Internet Files\Low\Content.IE5\index.dat | File Offset 809216 | QMW2_1.E01 | |
| 7 | 441981302501808 | https://www.facebook.com/fr/u.php?p=441981302501808&m=YnZMu1qK1BjtGO5 | 7/2/2016 4:46:38 PM | | Facebook | | Firefox Cache Records | 793352 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Mozilla\Firefox\Profiles\23recwts.default\cache2\entries\72B0715D16A9C36719209E19B79515BA2D621FA0 | n/a | QMW2_1.E01 | |
| 8 | 493123744038507 | http://www.facebook.com/fr/u.php?p=493123744038507&m=16ecb49d-e2b3-47d1-b050-baf531a78c71 | 6/19/2016 12:54:42 PM | | Facebook | | Internet Explorer Cache Records | 779855 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Microsoft\Windows\Temporary Internet Files\Low\Content.IE5\index.dat | File Offset 4707072 | QMW2_1.E01 | |

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 | 646236035417369 | https://www.facebook.com/fr/u.php?p=646236035417369&m=CAESELJ7MK0U4TqzNa1dmt2TK2Q&google_cver=1 | 7/2/2016 4:50:15 PM | | Facebook | | Firefox Cache Records | 791807 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Mozilla\Firefox\Profiles\23recwts.default\cache2\entries\34CD193E87279AD59D35D4F1FE60F6A2B039CE4C | n/a | QMW2_1.E01 | |
| 10 | flat earth | https://s.youtube.com/api/stats/playback?of=q-ElczCmNQBiMASFhjtU0g&q=flat+earth&ei=RjvxWbiuBMiS8gTN4K-4Aw&referrer=https%3A%2F%2Fwww.youtube.com%2Fresults%3Fsearch_query%3Dflat%2Bearth&docid=UbYtkrTquXE&el=detailpage&fexp=23701513%2C23701774%2C23702322%2C23702700%2C23703446%2C23704248%2C23705485%2C23705597%2C23705739%2C23706129%2C23706530%2C23709746%2C23710230%2C23710363%2C9422596%2C9431754%2C9447915%2C9449243%2C9450138%2C9453078%2C9459678%2C9466593%2C9474463%2C9476026%2C9476327%2C9476866%2C9480 | | | Youtube | | Potential Browser Activity | 3077 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\pagefile.sys | File Offset 2814329849 | QMW1_1.E01 | |

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | flat earth | https://www.youtube.com/results?search_query=flat+earth&pbj=1 | | | Youtube | | Firefox Cache Records | 536174 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\AppData\Local\Mozilla\Firefox\Profiles\qziz2oz0.default\cache2\entries\86BF46E7D3DC0195D51FB4DA3828B13FC6FAEAFB | n/a | QMW1_1.E01 | Yes |
| 12 | flat earth | https://www.youtube.com/results?search_query=flat+earth | | | Youtube | | Potential Browser Activity | 555770 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\hiberfil.sys | Compressed block at offset 330971085, Offset within the block: 50513 | QMW1_1.E01 | |
| 13 | hotrod | https://thepiratebay.org/s/?q=hotrod&category=0&page=0&orderby=99 | 7/2/2016 10:46:07 PM | | Pirate Bay | | Firefox Web Visits | 772328 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Roaming\Mozilla\Firefox\Profiles\23recwts.default\places.sqlite | Table: moz_places(id: 175) Table: moz_historyvisits(id: 215) | QMW2_1.E01 | |

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | hotrod | https://thepiratebay.org/s/?q=hotrod&category=0&page=0&orderby=99 | 7/2/2016 10:46:07 PM | | Pirate Bay | | Firefox Web History | 772538 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Roaming\Mozilla\Firefox\Profiles\23recwts.default\places.sqlite | Table: moz_plac es(id: 175) | QMW2_1.E01 | |
| 15 | hotrod | https://thepiratebay.org/s/?q=hotrod&category=0&page=0&orderby=99 | 7/2/2016 10:46:14 PM | | Pirate Bay | | Firefox Cache Records | 791413 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Mozilla\Firefox\Profiles\23recwts.default\cache2\entries\25334250CC0660BC63A5269CBE3FAB76BBD446ED | n/a | QMW2_1.E01 | |
| 16 | mozill | https://www.bing.com/search?q=mozill | 7/10/2016 8:49:58 PM | | Bing | | IE InPrivate/Recovery URLs | 508852 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\AppData\Local\Microsoft\Internet Explorer\Recovery\Immersive\Active\{DD75C156-46DF-11E6-8259-4CBB58607571}.dat | File Offset 221617 | QMW1_1.E01 | |

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17 | mozilla firefox | https://www.bing.com/search?q=mozilla+firefox&form=PRDLCS&pc=MDDCJS&mkt=en-us&httpsmsn=1&refig=ac9c73025a324e45ba9ee414427097a8&pq=mozilla+firefox&sc=9-15&sp=-1&qs=n&sk=&ghc=1&cvid=ac9c73025a324e45ba9ee414427097a8 | 7/10/2016 8:50:01 PM | | Bing | mozilla firefox - Bing | Internet Explorer 10-11 Main History | 479539 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\AppData\Local\Microsoft\Windows\WebCache\WebCacheV01.dat | Table: Container _9 (EntryId: 20) | QMW1_1.E01 | |
| 18 | mozilla firefox | https://www.bing.com/search?q=mozilla+firefox&form=PRDLCS&pc=MDDCJS&mkt=en-us&httpsmsn=1&refig=ac9c73025a324e45ba9ee414427097a8&pq=mozilla+firefox&sc=9-15&sp=-1&qs=n&sk=&ghc=1&cvid=ac9c73025a324e45ba9ee414427097a8 | 7/10/2016 8:49:58 PM | | Bing | | IE InPrivate/Recovery URLs | 508846 | QMW1_1.E01 - Partition 5 (Microsoft NTFS, 456.58 GB) OS\Users\devs\AppData\Local\Microsoft\Internet Explorer\Recovery\Immersive\Active\{DD75C156-46DF-11E6-8259-4CBB58607571}.dat | File Offset 18011 | QMW1_1.E01 | |

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19 | mozilla firefox | http://www.bing.com/search?q=mozilla+firefox&form=PRHPCS&pc=HPDTDF&mkt=en-us&refig=9bc3c8d514db40daa81e90f11584bd6b&ghc=1&qs=AS&pq=mozilla+firefox&sc=8-15&sp=2&cvid=9bc3c8d514db40daa81e90f11584bd6b | 6/15/2016 11:06:55 PM | | Bing | | Internet Explorer 10-11 Main History | 755634 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\I\AppData\Local\Microsoft\Windows\WebCache\WebCacheV01.dat | File Offset 2795296 | QMW2_1.E01 | |
| 20 | mozilla firefox | http://www.bing.com/search?q=mozilla+firefox&form=PRHPCS&pc=HPDTDF&mkt=en-us&refig=9bc3c8d514db40daa81e90f11584bd6b&ghc=1&qs=AS&pq=mozilla+firefox&sc=8-15&sp=2&cvid=9bc3c8d514db40daa81e90f11584bd6b | | 2016-06-15 15:47:12 | Bing | | Internet Explorer 10-11 Daily/Weekly History | 756346 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\I\AppData\Local\Microsoft\Windows\WebCache\WebCacheV01.dat | File Offset 3621914 | QMW2_1.E01 | |
| 21 | penn and teller bullshit seasons | https://thepiratebay.org/s/?q=penn+and+teller+bullshit+seasons&page=0&orderby=99 | 7/2/2016 10:45:13 PM | | Pirate Bay | | Firefox Web Visits | 772317 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\I\AppData\Roaming\Mozilla\Firefox\Profiles\23recwts.default\places.sqlite | Table: moz_places(id: 169) Table: moz_historyvisits(id: 208) | QMW2_1.E01 | |

| Record | Search Term | URL | Date/Time - UTC+00:00 (M/d/yyyy) | Date/Time - Local Time (yyyy-mm-dd) | Search Engine | Web Page Title | Artifact | Artifact ID | Source | Location | Evidence Number | Deleted Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | penn and teller bullshit seasons | https://thepiratebay.org/s/?q=penn+and+teller+bullshit+seasons&page=0&orderby=99 | 7/2/2016 10:45:13 PM | | Pirate Bay | | Firefox Web History | 772529 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Roaming\Mozilla\Firefox\Profiles\23recwts.default\places.sqlite | Table: moz_places(id: 169) | QMW2_1.E01 | |
| 23 | penn and teller bullshit seasons | https://thepiratebay.org/s/?q=penn+and+teller+bullshit+seasons&page=0&orderby=99 | 7/2/2016 10:45:19 PM | | Pirate Bay | | Firefox Cache Records | 790548 | QMW2_1.E01 - Partition 2 (Microsoft NTFS, 449.07 GB) OS\Users\l\AppData\Local\Mozilla\Firefox\Profiles\23recwts.default\cache2\entries\00ECDC6443562E02CDFF49441F8A8EEC91D19DA7 | n/a | QMW2_1.E01 | |

# CHILD PORNOGRAPHY CASE – SENTENCED TO PROBATION

1.     *United States v. LaFrance*, No. 02-CR-81048 (E.D. Mich. 2005) (young defendant who went to trial, exchanged images);

2.     *United States v. Camiscione*, 04-CR- 594 (N.D. Ohio June 24, 2010) (as modified on Aug. 19, 2010) (sentenced to one day in prison followed by three years of supervised release with sixteen weeks of intermittent confinement, and six months of home detention with electronic monitoring where defendant had epileptic seizures and there was no evidence that he presented a risk to children);

3.     *United States v. Jones*, No. 04-CR-1840 (D.N.M. 2004) (defendant had Asperger's syndrome and family obligations);

4.     *United States v. Machmer*, No. 04-CR-097 (E.D. Va. 2005) (defendant had significant social skill development issues);

5.     *United States v. Bailey*, 369 F.Supp.2d 1090 (D. Neb. 2005) (defendant had significant family obligations and possession was temporary);

6.     *United States v. Miller*, No. 05-CR-00974 (N.D. Ill. 2006) (defendant possessed five illegal videos and an additional thirty-two deleted illegal images);

7.     *United States v. Saenz*, No. M-05-CR-877 (S.D. Tex. 2011) (defendant had been abused as a child, served five years of home confinement, and never acted out; he possessed 126 images, including those of boys being raped);

8.     *United States v. Stewart*, No. 05-CR-242 (D.N.J. Sept. 30, 2005) (sentenced to three years' probation with twelve months home confinement where defendant was 87 years old at the time of sentencing);

9.     *United States v. Boyd*, No. 06-CR-20243 (E.D. Mich. 2006) (defendant with social deficits);

10.     *United States v. Boyden*, No. 2:06-CR-20243 (E.D. Mich. 2007) (defendant purchased access to three child pornography websites over a number of years and searched for illegal images);

11.     *United States v. Calderon-Sabalier*, No. 06-CR-0122 (D.P.R. 2006);

12.     *United States v. Horton*, No. 06-1880 (D. Ariz. 2007) (defendant was old and had health problems, possessed more than 600 images);

13.     *United States v. Shore*, No. 06-CR-00335 (E.D. Cal. 2007) (defendant was victim of molestation, possessed over 4,500 images, and shared images);

14.     *United States v. Butler*, No. 1:07-CR-00466 (M.D. Pa. 2008) (defendant was in his sixties with no prior criminal conduct);

15.     *United States v. Cernik*, No. 07-20215, 2008 WL 2940854 (E.D. Mich. 2008) (defendant

currently in treatment, employed, and incarceration would increase, not decrease defendant's risk to the public);

16.     *United States v. Colon-Rodriguez*, No. 07-CR-00481 (D.P.R. 2008);

17.     *United States v. Connelly*, No. 07-CR-830 (D.N.J. 2008) (sentenced to five years' probation and a $1000 fine where guideline range was 78-97 months);

18.     *United States v. Gonzalez*, No. 07-CR-328 (W.D. Wash. 2009) (where guideline range was 87-108 months, defendant had never abused children, was cooperative and presented a low risk of re-offending, and the government agreed that a "substantial variance" was warranted (in part because the defendant had not been involved in producing child pornography), sentenced to one day in prison followed by 10 years of supervised release);

19.     *United States v. Guismondi*, No. 07-CR-00610 (E.D.N.Y. 2009) (developmentally disabled defendant who was victim of sexual abuse);

20.     *United States v. Joy*, 07-CR-187 (N.D.N.Y. 2008) (one day in custody);

21.     *United States v. Polito*, 215 F. App'x 354, 356-57 (5th Cir. 2007) (young, immature defendant who had never before been arrested for any offense; presented no threat to the community or young children; receiving mental health treatment, maintained employment, and avoided any problem with the law, and a term of imprisonment would interrupt mental health treatment);

22.     *United States v. Arzberger*, No. 08-CR-894 (S.D.N.Y. 2010) (sentenced to five years' probation where guideline range was 41-51 months);

23.     *United States v. Carpenter*, No. 08-CR-06256 (W.D.N.Y. 2009) (defendant possessed several videocassettes containing at least 150 illegal images);

24.     *United States v. Crespo-Rios*, No. 08cr208, 2015 WL 6394256, *1 (D.P.R., Oct. 19, 2015) (holding that "time served followed by a long period of supervised release [ ...] is justified in view of each of the sentencing factors outlined in 18 U.S.C. § 3553");

25.     *United States v. DeHaven*, No. 08-CR-31 (N.D. Iowa 2009) (defendant had social anxiety disorder and a strong work history);

26.     *United States v. Driskell*, No. 08-CR-641 (E.D. Mo. 2009) (defendant had illegal images available for distribution through file-sharing program, but took steps to delete illegal images, had significant family obligations);

27.     *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (defendant would benefit from continued psychological treatment with his doctor);

28.     *United States v. Dulak*, No. 08-CR-490 (D.N.J. 2009) (young, intelligent defendant with documented mental health history);

29.     *United States v. Grosinsky*, No. 08-CR-20090, 2008 WL 5062845 (E.D. Mich. 2008) (sentenced to one day in prison followed by five years of supervised release, and 100 hours of community service where probation recommended a variance and where the images were of the defendant and a mature-looking male only 3 months shy of 18 who solicited the defendant, the defendant was in treatment and "displays an understanding of his errant ways, and is unlikely to repeat his wrongful conduct");

30.     *United States v. Hansen*, No. 08-CR-5090 (W.D. Wash. 2008) (sentenced to one day in prison followed by 30 years of supervised release to include 80 hours of community service, and a fine of $5,000 where defendant was mildly mentally retarded, had never touched a child, presented limited risk to children, and the government agreed that a "long period of supervised release, combined with electronic home monitoring, will adequately punish [the defendant] and protect the public");

31.     *United States v. Helbig*, No. 08-CR-30052 (D. Mass. 2009) (sentenced to five years' probation, six months of which was in a halfway house and six months on home confinement, based on defendant's immaturity and lack of judgment, deep contrition and understanding of the seriousness of the offense, lack of risk of harm to children, and particularly strong family support);

32.     *United States v. Hill*, No. 08-CR-00208 (W.D. Okla. 2009) (defendant had been sexually abused, obtained and shared images through file-sharing);

33.     *United States v. McDonald*, No. 3:08-CR-30031 (D. Mass. 2008) (defendant underwent therapy);

34.     *United States v. Morrison*, No. 08-CR-167 (E.D. Cal. July 18, 2011) (defendant was 70 years old, government agreed to sentence);

35.     *United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008) (defendant possessed 1,189 images, including those stored on disks and hard drives, and ordered videotapes from overseas, but had undergone mental health treatment, had family responsibilities, and presented no danger to children);

36.     *United States v. Ramos*, No. 08-CR-30034 (D. Mass. 2010) (sentenced to four years' probation, twelve months of which in a halfway house, where defendant had no criminal history and had suffered from major depression over many years);

37.     *United States v. Rausch*, 570 F. Supp. 2d 1295 (D. Colo. 2008) (defendant had multiple health problems);

38.     *United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008) (defendant lost career because of case, was progressing in treatment);

39.     *United States v. Rubino*, No. 4:08-CR-00114 (M.D. Pa. 2009) (defendant was a mentally challenged man with prior drug convictions who possessed 25 disks containing child pornography);

40.     *United States v. Simpson*, No. 08-CR-0267 (E.D. Va. 2008) (65-year-old defendant with

health problems);

41.     *United States v. Syzmanski*, No. 08-CR-417 (N.D. Ohio 2011) (sentenced to one day in prison followed by five years of supervised release where 54- year-old defendant had strong work record and community support, health problems, and therapist indicated that he presented no risk to children);

42.     *United States v. Van Dusen*, No. 08-CR-60136 (D. Or. 2010) (sentenced to one day in prison plus up to one year in a residential reentry center and 10 years of supervised release where defendant was mentally and physically frail and defendant presented expert on the Bureau of Prisons stating that the Bureau was not able to address his medical problems very well and that the defendant would be susceptible to extortion and assault);

43.     *United States v. Victor*, No. 08-CR-5821 (W.D. Wash. 2010) (where guideline range was 121-151 months, sentenced to one day in prison followed by 10 years of supervised release with the first 6 months on home confinement with electronic monitoring plus 100 hours of community service, where defendant had been in active military duty, was successfully undergoing treatment, was cooperating, presented little risk of harm to children, and the government recommended a downward variance to a guideline range of 27-33 months);

44.     *United States v. Angle*, 09-CR-401 (M.D. Fla.) (defendant was 75-year-old with medical needs);

45.     *United States v. Applequist*, No. 09-CR-120 (D. Alaska 2010) (sentenced to five years' probation plus a $12,500 fine where 76-year-old defendant was bed-ridden with Parkinson's disease and chronic obstructive pulmonary disease);

46.     *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (defendant actively solicited illegal images, but could not be accommodated adequately in federal prison and needed outpatient psychiatric monitoring and management);

47.     *United States v. Campbell*, No. 09-CR-3023 (D. Neb. 2010) (sentenced to five years' probation with 120 days in a halfway house followed by six months of home confinement on electronic monitoring, 100 hours of community service, plus a $7,500 fine, where images were not as serious as most, defendant had successfully passed a polygraph, and forensic evaluations indicated that he presented little risk of recidivism);

48.     *United States v. Flores*, No. 09-CR-60100 (D. Or. 2010) (defendant a 23-year military veteran, lost $1.9 million in retirement benefits as a result of conviction, scrubbed computer to eliminate evidence);

49.     *United States v. Graci*, No. 2:09-CR-00131 (E.D. Pa. 2009) (defendant, a former elementary school teacher, purchased access to child pornography websites on three different occasions);

50.     *United States v. Huffman*, No. 09-CR-20073 (D. Kan. 2010) (defendant was young and attending treatment);

51. *United States v. Lafrance*, No. 09-CR-20401 (E.D. Mich. 2010) (78-year-old defendant with health issues who distributed, received, and possessed illegal images through file-sharing program);

52. *United States v. Lagae*, 09-CR-20310 (eleven years of supervised release with one year of home confinement);

53. *United States v. Lang*, No. 09-CR-036 (M.D. Tenn. Nov. 21, 2012) (sentenced to time served (six days) followed by seven years of supervised release with the condition that he teach in prison for forty hours a week for three years, plus a $10,000 fine where defendant had been a professor of sociology for 35 years, had strong family and community support, had only a minimal amount of child pornography, and immediately sought therapy);

54. *United States v. Malakoff*, No. 1:09-CR- 00051 (D.D.C. 2009) (defendant was sexually abused as a child and suffers from post-traumatic stress disorder);

55. *United States v. Manke*, No. 09-CR-172, 2010 U.S. Dist. LEXIS 3757 (E.D. Wis. 2010) (defendant possessed more than 1,200 images, chatted with others to obtain more images, made progress in mental health treatment before sentencing);

56. *United States v. Meillier*, 650 F. Supp. 2d 887 (D. Minn. 2009) (defendant was mentally disabled and had been the victim of sexual abuse);

57. *United States v. Noel*, No. 09-CR-00701 (C.D. Cal. 2010) (socially and emotionally underdeveloped 24-year-old defendant had become addicted to viewing child pornography at age 14 while recuperating from major surgery, which left him physically disabled, and was now in counseling; sentenced to five years' probation (down from guideline range of 78-97 months), with the first six months to be served in a "jail-type facility");

58. *United States v. Robinson*, No. 09-CR-20091 (E.D. Mich. 2013) (since time of arrest, defendant's severe mental health problems, including suicidal ideation, had much improved through consistent psychiatric treatment and supervision and he had passed four polygraph tests while on release; resentenced to one day in prison followed by ten years' supervised release (which was an increase from one previous sentence of day in prison followed by five years' supervised release, which had been reversed as substantively unreasonable));

59. *United States v. Smith*, No. 09-CR-0740 (E.D. Mo. 2010) (defendant had strong family and community support);

60. *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (defendant had no criminal history, was remorseful and undergoing treatment, which was likely to be effective; sentenced to one day in prison followed by 10 years supervised release plus a $5,000 fine);

61. *United States v. Teagno*, No. 09-CR-0328 (E.D. Va. 2009);

62. *United States v. Teays*, No. 09-CR-532 (E.D. Cal. 2012) (sentenced to five years' probation where defendant had been the victim of sexual abuse as a child, was socially withdrawn, and had been undergoing successful counseling);

63.    *United States v. Wright*, No. 09-CR-311 (D.D.C. 2010) (sentenced to five years' probation (where guideline range was 33-41 months) with the special condition that the defendant continue in mental health treatment and perform 600 hours of community service);

64.    *United States v. Young*, No. 09-CR-252 (W.D. Mich. Feb. 5, 2010) (sentenced to one day in prison followed by seven years of supervised release, and a fine of $7,000, where defendant was completely disabled due to multiple sclerosis and suffered severe depression);

65.    *United States v. Fulkerson*, No. 10-CR-0526 (S.D. Cal. 2010) (defendant had significant medical problems);

66.    *United States v. Moreira*, No. 10-CR-002 (D.D.C. 2010) (sentenced to five years' probation with victim restitution ordered totaling $11,600 where clinical evaluations indicated defendant did not present a risk of harm and defendant had family support and strong work history);

67.    *United States v. Pustis*, No. 10-CR-60038 (D. Or. 2010) (sentenced to five years' probation (where guideline range was 87-108 months) and $20,000 fine, where defendant was over 50 years old, had engaged in extensive therapy since his arrest, passed a polygraph, and presented little risk of committing further crimes);

68.    *United States v. Birdsall*, No. 11-CR-134 (D.N.J. 2011) (20-year-old offender who collected more than 1800 images and 74 videos using file-sharing software);

69.    *United States v. Dyson*, 11-CR-1386 (D.N.M. 2015) (time served of two days after hung jury);

70.    *United States v. Proulx*, 11-CR-10274 (D. Mass. 2012) (sentenced to five years' probation, the first six months on home detention with electronic monitoring, where defendant had no pedophilic interest in children, a strong work history, and strong family support);

71.    *United States v. Reardon*, 11-CR-10325 (D. Mass. 2012) (sentenced to five years' probation where the defendant was very timid and had a history of bipolar disorder and suicide attempts);

72.    *United States v. Teves*, 11-CR-10351 (D. Mass. 2012) (sentenced to five years' probation, the first six months on home confinement with electronic monitoring where defendant's treating physicians reported that he presents no danger and that incarceration would interrupt successful treatment);

73.    *United States v. Tucker*, No. 11-CR-00252 (M.D. Fla. 2012) (sentenced to time served (one day) followed by 15 years of supervised release, with 18 months in home detention with electronic monitoring);

74.    *United States v. Waters*, No. 11-CR-98 (D. Vt. 2012) (young, immature defendant, making progress in treatment, vulnerable in prison, little risk of re-offending);

75.     *United States v. A.F.*, 12-CR-256 (E.D. Pa.2012) (one day incarceration for client who was 72 years old);

76.     *United States v. Alessi*, No. 12cr157 (E.D.N.Y Apr. 3, 2013) (one day time- served with seven years' supervised release)

77.     *United States v. Banta*, 12-CR-20156 (E.D. Mich 2012) (time served and ten years of supervised release);

78.     *United States v. Bender*, 12-CR-128 (M.D. Fla. 2013) (sentenced to time served (one day) followed by 10 years of supervised release with two years on home confinement where defendant was young, suffered from depression, was vulnerable to abuse in prison presented a low risk of harm to others, and was doing well in treatment);

79.     *United States v. Dubin*, 12-CR-20828 (E.D. Mich. 2012) (one day in custody followed by five years of supervised release based on autism and low risk of recidivism);

80.     *United States v. Hall*, No. 12-CR-20119 (W.D. Tenn. Jan. 16, 2013) (as corrected on Feb. 20, 2013) (sentenced to time served (one day) followed by ten years of supervised release, with five years on home confinement, where defendant had been sexually abused as a child, suffered from serious medical problems and depression, and had a long work history);

81.     *United States v. Mangual*, No. 12cr170 (E.D.N.Y May 3, 2013) (five years' probation);

82.     *United States v. Rhoads*, No. 12-CR-40078 (D. Kan. 2013) (sentenced to five years' probation (guideline range of 97-121 months) where defendant was 18-19 years old at the time of the offense, was a victim of childhood abuse, and was successfully undergoing outpatient sex offender treatment);

83.     *United States v. Wayne*, No. 12cr436 (E.D.N.Y Dec. 4, 2013) (five years' probation with twelve months home confinement);

84.     *United States v. Maliza*, No. 13cr628 (E.D.N.Y. June 25, 2015) (three years' probation);

85.     *United States v. Mallatt*, No. 13cr3005, 2013 WL 6196946, at *13 (D. Neb. Nov. 27, 2013) ("sentence of time served, followed by six years of supervision with special conditions including intensive treatment is adequate to fulfill the goals of sentencing in this case");

86.     *United States v. Roth*, No. 13cr392 (E.D.N.Y June 23, 2015) (five years' probation with 100 hours of community service);

87.     *United States v. Stokes*, No. 13cr404 (E.D.N.Y. Oct. 9, 2014) (one day time-served with five years' supervised release);

88.     *United States v. Arkhangorodskiy*, No. 14cr283 (E.D.N.Y. Mar. 17, 2015) (four days time-served with five years' supervised release, 200 hours of community service, and 6 months of home confinement);

89. *United States v. Bertrand*, No. 14cr286 (E.D.N.Y. June 15, 2015) (four years' probation);

90. *United States v. Gonzalez*, No. 14cr116 (E.D.N.Y. Aug. 7, 2015) (five years' probation);

91. *United States v. Karlberg*, 14-CR-030 (D. Vt. 2015) (time served and lifetime of supervised release for autistic defendant with lower level of intellectual functioning);

92. *United States v. Mule*, Case No. 14cr269 (E.D.N.Y. Aug. 11, 2015) (one day time-served with ten years' supervised release);

93. *United States v. Vasquez*, Case No. 14cr316 (E.D.N.Y. Jan. 22, 2016) (five days' time-served with seven years' supervised release);

94. *United States v. Zofchak*, 14-CR-20538 (E.D. Mich 2015) (ten years of supervised release based on mental health issues);

95. *United States v. D.M.M.*, 15-CR-476 (E.D. Pa. 2015) (sentence of one day of incarceration followed by six months of house arrest with electronic monitoring);

96. *United States v. Dirisio*, 15-CR-049 (S.D. Iowa 2015) (time served with ten years of supervision for with significant mental impairments and history of physical and mental abuse as a child);

97. *United States v. Ferrell*, No. 1:15cr331 (E.D.N.Y. Mar. 18, 2016) (time-served sentence of one day imprisonment with six years of supervised release);

98. *United States v. Haller*, No. 2:15cr242 (W.D. Wa. Apr. 8, 2016) (two-days, time-served with ten years of supervised release);

99. *United States v. Jennings*, 15-CR-275 (D. Vt. 2015) (time served followed by ninety days' home confinement and thirty years of supervised release);

100. *United States v. Lorente*, No. 2:15cr274 (W.D. Wa. Jan. 10, 2017) (time-served);

101. *United States v. Seago*, 15-CR-515 (E.D. Mo. 2015) (time served with 12 months home confinement based upon advanced age, medical issues, difficult upbringing and lack of criminal history);

102. *United States v. Benton*, 16-CR-287 (M.D. Fla. 2016) (sixty months' probation for client with mental illness including paranoid schizophrenia who helped care for elderly family members);

103. *United States v. Chung*, No. 3:16cr33 (W.D. Wis. Sept. 2, 2016) (five years' probation for possession);

104. *United States v. Heckenlively*, Case No. 16-CR-328-RSM (W.D. Wa. September 15, 2017) (time served despite prior juvenile child molestation conviction based upon youth, danger of exploitation in prison and positive psychosexual evaluation);

105. *United States v. Jimenez*, 16-CR-20899 (S.D. Fla. 2016) (time served based on physical disabilities, medical complications and low risk of recidivism);

106. *United States v. Lovett*, 16-CR-020 (D. Vt. 2017) (time served followed by five years of supervised release);

107. *United States v. R.O.*, 16-CR-188 (E.D. Pa. 2016);

108. *United States v. R.V.*, 157 F. Supp. 3d 207, 212 (E.D.N.Y. 2016) (imposing time-served sentence of five days plus supervised release);

109. *United States v. Roberts*, No. 4:16cr63 (E.D. Va. Apr. 18, 2017) (pled guilty to access with intent to view, guidelines 63-78 months, received time-served sentence of twelve days with one year on home electronic monitoring based on lack of criminal history, prior productive and stable life, little chance of recidivism);

110. *United States v. Zimmerman,* 17-CR-33-JLQ (E.D. Wa Sept. 15, 2017) (received sentence of one day incarceration and six months home detention for pharmacist with virtually no criminal history with documented history of mental illness including psychotic delusions dating back nineteen years).